Bruce **WALTER**, Plaintiff,

v.

Robert **BOTTI**, in his capacity as Director of the Department of Public Works of the City of Union City, and City of Union City, Defendants.

Civ. A. No. 83–730.

United States District Court,
D. New Jersey.

Aug. 30, 1983.

Eric J. Bal, Union City, N.J., for plaintiff.

Edward J. Lynch, Union City, N.J., for defendants.

## OPINION

SAROKIN, District Judge.

This matter is before the court on motion of defendant for summary judgment or, in the alternative, for dismissal on grounds of abstention.

Plaintiff, Bruce Walter, served as Deputy Director of the Department of Public Works of Union City, New Jersey, until, he alleges, he was wrongfully dismissed by defendant, Robert Botti, in March, 1982. Botti, until his recent appointment as mayor of Union City, served as the Director of the city's Department of Public Works. In 1976, Botti appointed Walter to serve as deputy director of the department for a two-year term. That appointment was subsequently renewed and Walter's employment continued until his termination on April 9, 1982.

Plaintiff contends that he was terminated because he became a political adversary of Botti. In early 1982, plaintiff had become aligned with a political organization known as Alliance 1982, an adversary of Y.O.U., the organization supported by defendant. In March, 1982, plaintiff filed nominating petitions, signed by the requisite number of Union City voters, for his election to the Union City Board of Commissioners. This qualified plaintiff as a candidate for office in opposition to defendant and others in the then upcoming May, 1982 elections.

Less than one week after having filed his petition, plaintiff was notified that his employment was being terminated. That termination, plaintiff alleges, was undertaken for political reasons only, and violated his right to free speech and association. In support of this claim, plaintiff has filed an uncontested affidavit of a reporter for The Dispatch, a Union City newspaper, in which the reporter states that he was told by defendant that the firing of plaintiff was strictly for political reasons. The reporter also notes that, after asking Botti whether plaintiff was fired because of the quality of his work, Botti replied, "absolutely not."

In another uncontested affidavit, sworn to by plaintiff himself, plaintiff states that his decision-making authority was extremely limited and was confined to such mundane matters as switching men from regular street cleaning equipment to snow plows when it snowed. Plaintiff further states that he was responsible for supervising the work of street cleaners and garage employees, and performed physical labor. In addition, he notes that although he made recommendations on hiring and firing decisions, it was the director who was responsible for the ultimate decisions on these matters.

Defendant has filed no affidavits with the court. His only response to plaintiff's allegations is found in his answer, which states that a deputy-director must have a relationship of loyalty, trust, and confidence with his director. Nothing has been placed on the record by defendant which describes the duties of a deputy director, nor the effect that plaintiff's candidacy has had on the efficiency of the office. The court must now consider whether abstention or summary judgment is appropriate under these circumstances.

## DISCUSSION OF THE LAW

Union City, acting pursuant to state law, has chosen to adopt a commission form of government to conduct its affairs. N.J. Stat.Ann. Title 40 chs. 70–76 (Supp.1982–83). Under state law, cities adopting a commission form of government may provide for the appointment of deputies by ordinance. *Id.* § 40:72–9. Union City, through various ordinances, has provided for the appointment of such deputies. Under the legislative scheme, the director prescribes the duties and powers of the deputy. The deputy is specifically precluded by ordinance, however, from acting for the director at meetings of the board of directors. Union City, N.J. Rev. Ordinances § 2:13.3 (1975). In addition, by statute and by ordinance, a deputy "may be removed by his principal at any time, and such removal shall not be reviewable." N.J.Stat.Ann. § 40:72–9; Union City, N.J. Rev. Ordinances § 2:13.1 (1975).

Plaintiff claims that irrespective of the statute permitting removal of a deputy "at any time", such removal is prohibited where it is undertaken for constitutionally impermissible reasons. Here, plaintiff claims that the removal was for political reasons only, and therefore improperly penalized him for exercising his First Amendment rights of free speech and association. Defendant, on the other hand, contends that he had an absolute right under the statute to terminate plaintiff's employment, that plaintiff had no property right to his job, and that because no property right existed, there can be no constitutional violation if the job is taken away. Additionally, defendant contends that whether plaintiff has a property right under state law is an unsettled question, requiring this court to abstain until the issue is settled by the state court. Defendant is mistaken; abstention would be entirely inappropriate in these circumstances.

In *Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court fashioned the abstention doctrine. That doctrine requires, in certain situations, that the federal courts refrain from adjudicating a federal constitutional question if a state court adjudication of related state law issues may obviate the need for a decision on the federal issue. The circumstances under which abstention is required were outlined by Judge Garth, writing for the Third Circuit, in *D'Iorio v. County of Delaware,* 592 F.2d 681 (3rd Cir.1978):

> First, there must be uncertain issues of state law underlying the federal constitutional claims brought in the federal court. Second, these state law issues must be amenable to an interpretation by the state courts that would obviate the need for or substantially narrow the scope of the adjudication of the constitutional claims. And third, it must appear that an erroneous decision of state law by the federal court would be disruptive of important state policies.

This case falls far short of meeting these criteria.

First, the state statute providing for removal of deputy directors is not vague; it states unequivocally that a deputy director may be removed "at any time" and that the decision "shall not be reviewable." Therefore, plaintiff could not obtain a hearing in state court to review the merits of the dismissal. Moreover, the statute makes clear that plaintiff has no property right in the position, notwithstanding defendant's contention that this is an unsettled question of state law. Second, the time for instituting an action in lieu of prerogative writs in the state is forty-five days, and plaintiff's action, even if commenced in the state would be untimely. Finally, this court's decision on whether a constitutional violation has occurred through dismissal of plaintiff, would not be disruptive of important state policies because, as will be discussed later in this opinion, the existence or non-existence of a property right is not critical to the analysis of the Section 1983 claim. The court therefore concludes that there is no reason to abstain from considering the merits of the summary judgment motion.

Defendant's contention that an employer has an absolute right to terminate an employee where no property right exists, is supported by a statement of Justice Holmes, who wrote, when sitting on the Supreme Judicial Court of Massachusetts: "A policeman may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." *McAuliffe v. Mayor of New Bedford,* 155 Mass. 216, 29 N.E. 517, 517 (1892). As the Supreme Court has recently noted, Holmes' epigram expressed the law as it existed for most of this century: a public employee had no right to object to conditions placed upon the terms of employment, even if those conditions restricted the exercise of constitutional rights. *Connick v. Myers,* —— U.S. ——, 103 S.Ct. 1684, 1688, 75 L.Ed.2d 708 (1983). If the law had not changed since the time of Holmes' observation, defendant would be correct that he had an absolute right to terminate plaintiff's employment. The law has changed, however, and today, if undertaken for a constitutionally impermissible reason, the termination of a public servant's employment is prohibited. *Perry v. Sindermann,* 408 U.S. 593, 596–97, 92 S.Ct. 2694, 2696–97, 33 L.Ed.2d 570 (1972). In *Perry,* a non-tenured faculty member of a college became involved in public disagreements with the Board of Regents of the school. On one occasion, the teacher ran an advertisement critical of the board in a newspaper. Subsequently, when the teacher's one-year contract terminated, the Board of Regents voted not to renew it. Rejecting the Regents argument that the teacher could be terminated for any reason because he had no property right in his job, the Supreme Court stated:

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if

the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." *Id.* at 597, 92 S.Ct. at 2697.

Subsequently, in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court considered whether non-civil service employees of a Sheriff's Office could be terminated solely because they did not support the political party then in office. Citing *Perry,* the Court stated that it had "made clear" that even though a person may not have a 'right' to a valuable government benefit, there are some reasons upon which the government may not rely in taking that benefit away. *Id.* at 360–61, 96 S.Ct. at 2683. The Court then went on to recognize that "political belief and association constitute the core of those activities protected by the First Amendment, *id.* at 356, 96 S.Ct. at 2681, and that the "right to associate with the political party of one's choice is an integral part" of these basic constitutional freedoms. *Id.* at 357, 96 S.Ct. 2681. Where first amendment rights are threatened, the Court stated, the impairment must withstand "exacting scrutiny" in order to survive. *Id.* at 362, 96 S.Ct. at 2684. And it is the government that must show that the encroachment advances a paramount state interest. *Id.* In completing its analysis, the Court recognized that patronage dismissals could at times be justified where the person dismissed was responsible for making policy. *Id.* at 367, 96 S.Ct. at 2686. Such persons were contrasted with those in nonpolicymaking positions, who usually "have only limited responsibility and are therefore not in a position to thwart the goals of the in-party." *Id.* The Court noted that in distinguishing between policymakers and nonpolicymakers, consideration must be given to whether the employee occupies a job with "limited and well defined objectives", or holds a position requiring the formulation and implementation of broad plans. *Id.* at 368, 96 S.Ct. at

2687. Employees in the former category are likely to be nonpolicymaking and those in the latter are likely to be in the alternate class.

In *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), another first amendment decision, the Supreme Court considered whether a non-tenured teacher, who exercised his right to free speech in criticizing the school board, could be terminated where other independent reasons were offered for the termination. The Supreme Court found that merely because the exercise of the individual's first amendment rights played a "substantial part" in the decision to terminate the teacher, that is not sufficient to amount to a "constitutional violation justifying remedial action." *Id.* at 285, 97 S.Ct. at 575. The Court stated that "the constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." *Id.* at 285–86, 97 S.Ct. at 575. The Court then went on to hold that initially the burden is upon the employee to show that his conduct was constitutionally protected and was a "substantial factor" in the employer's decision to terminate him. *Id.* at 287, 97 S.Ct. at 576. The burden then shifts to the employer to show, by a preponderance of the evidence, that the same decision would have been reached even in the absence of the protected conduct. *Id.* The Court remanded the case to the lower court to apply the test set forth by the Supreme Court.

Finally, in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court considered another case in which public employees, this time state public defenders, were dismissed because they were affiliated with the wrong political party. Although it held that the employees had been wrongfully dismissed, the Court altered somewhat the focus of the analysis used in *Elrod,* noting that the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position, but rather "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the office involved." *Id.* at 518, 100 S.Ct. at 1295. The Court, citing *Elrod,* reasoned that "if an employee's private political beliefs would interfere with the discharge of his public duties, his first amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Id.* at 517, 100 S.Ct. at 1294.[1]

■ Application of these Supreme Court decisions to the facts of this case makes summary judgment entirely inappropriate. Plaintiff has alleged that he was dismissed solely because he became a political adversary of Botti. Therefore, first amendment values have been implicated and it is incumbent upon defendant to demonstrate that the dismissal was legitimate. No affidavit has been filed by defendant, nor has he filed any other sworn facts to contradict plaintiff's claim that he was fired solely because he became a political adversary of Botti. Plaintiff, on the other hand, has filed an affidavit in which he states that not only were his job responsibilities purely ministerial, but that he had been out of work with a broken ankle from the end of January 1982 until his dismissal on April 9, 1982. Defendant does not claim that plaintiff's injuries were not real, nor does he contend that plaintiff should have been at work even with a broken ankle. In addition, there is no contention by defendant that plaintiff's political activity impaired the efficiency of the office, nor that his absence did so. In short, defendant has not set forth any facts contradictory to plaintiff's claim that he was dismissed from his employment strictly for political reasons.

---

1. The interrelationship of speech and government efficiency was recently considered again in *Connick v. Myers,* —— U.S. ——, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), where the Court held that a questionnaire, circulated in a District Attorney's office by an assistant of that office, did not fall under the rubric of comment on matters of public concern, but instead dealt with purely internal matters of the office and had the effect of substantially interfering with its operation.

Under these circumstances, defendant is hardly entitled to summary judgment.

At oral argument, defendant argued that the New Jersey statute permitting the appointment of deputy directors under commission governments and allowing a deputy's discharge for any reason would permit termination not only for statements made in the exercise of free speech, but even if predicated upon the religious beliefs of the subordinate employee. In essence, defendant argues that the state statute preempts the federal constitution. Such argument is so frivolous that it does not merit serious discussion.

The court recognizes that in certain situations, where by the nature of the employment and the duties and confidences incident thereto, candidacy for office may be so inconsistent with the performance of those duties, as to justify a discharge of the employee. The right of free speech is so paramount, however, that discharge for its exercise must be viewed with great suspicion and should be upheld only in the face of clear and compelling circumstances. The general rule should be that no employee can be discharged for political activity or for expressing his or her views on matters of public interest. The exceptions to that rule should arise only when the employer clearly demonstrates that the political candidacy or advocacy of the employee is irreconcilable with continued employment. Since those factual issues cannot be resolved absent a plenary trial, the motion of defendant for summary judgment is denied. Counsel for plaintiff is directed to submit an order to the court in accordance with this opinion.